IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| David L. Parker, #250125, ) | Civil Action No.:2:15-cv-04846-TLW-MGB |
| ) | |
| Petitioner, ) | |
| ) | **REPORT AND RECOMMENDATION** |
| v. ) | **OF MAGISTRATE JUDGE** |
| ) | |
| Warden, Tyger River Correctional ) | |
| Institution, ) | |
| ) | |
| Respondent. ) | |

The Petitioner, a state prisoner proceeding *pro se*, seeks habeas relief pursuant to 28 U.S.C. § 2254. This matter is before the Court on the Respondent's Motion for Summary Judgment. (Dkt. No. 14; *see also* Dkt. No. 13.)

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review the instant petition for relief and submit findings and recommendations to the District Court.

The Petitioner filed the instant action on or about December 1, 2015. (*See* Dkt. No. 1 at 15 of 15.) On March 28, 2016, Respondent filed a Motion for Summary Judgment. (Dkt. No. 14; *see also* Dkt. No. 13.) By order filed March 29, 2016, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the Petitioner was advised of the summary judgment procedure and the possible consequences if he failed to adequately respond to the motion. (Dkt. No. 15.) On or about May 3, 2016, Petitioner filed a Response in Opposition to the Motion for Summary Judgment, to which Respondent filed a Reply. (*See* Dkt. No. 17; Dkt. No. 18.)

## PROCEDURAL HISTORY

The Petitioner is currently confined within the South Carolina Department of Corrections ("SCDC") at Tyger River Correctional Institution. In August of 2011, the Cherokee County Grand Jury indicted Petitioner on two counts of armed robbery, and in April of 2012, the Cherokee County Grand Jury indicted Petitioner for attempted armed robbery. (R. at 73-81.) Petitioner was represented by Mitch Slade, Esquire. (*See* R. at 1.) On April 16, 2012, Petitioner pled guilty before the Honorable

1

Roger C. Couch to attempted armed robbery and two counts of common law robbery; Petitioner pled guilty pursuant to a negotiated sentence. (R. at 1-21.) Judge Couch sentenced Petitioner to eight years, concurrent, on each of the convictions. (R. at 20.)

Petitioner did not file a direct appeal, but filed an application for post-conviction relief ("PCR") on August 23, 2012. (R. at 22-28.) The following question and answer appeared in his PCR application (verbatim):

> 10. State concisely the grounds on which you base your allegation that you are being held in custody unlawfully:
>
>> Conviction was obtained in direct violation of United States Constitution 6, and 14th Amendments and South Carolina Const. Art. 1, Sec. 14.
>
> 11. State concisely and in the same order the facts which support each of the grounds set out in (10):
>
>> Counsel was ineffective for fail to motion the court for a continuous, fail to suppress photo line, failing to motion for dismissal of charges, ect.

(R. at 24.)

On September 30, 2013, an evidentiary hearing was held before the Honorable J. Derham Cole. (R. at 34-64.) Petitioner was present and represented by J. Kenneth Robertson, Esquire. (*See* R. at 34.) In an order dated March 13, 2014, Judge Cole denied the application for post-conviction relief and dismissed the petition. (R. at 65-72.)

Petitioner appealed, and on June 17, 2015, through Attorney Lara M. Caudy of the South Carolina Commission on Indigent Defense, he filed a *Johnson* Petition for Writ of Certiorari. (Dkt. No. 13-1.)[1] Therein, Petitioner raised the following issue:

> Whether Petitioner's guilty plea was knowingly, intelligently, and voluntarily made where plea counsel incorrectly advised Petitioner that attempted armed robbery was not a violent crime or a most serious offense since the plea court's correction of this incorrect advice still left Petitioner with no option other than to continue with the guilty plea since counsel was not prepared for trial?

---

[1] *See Johnson v. State*, 294 S.C. 310, 364 S.E.2d 201 (1988).

(Dkt. No. 13-1 at 3 of 13.) Ms. Caudy also filed a petition to be relieved as counsel. (Dkt. No. 13-1 at 12 of 13.) Petitioner filed a *pro se* response to the *Johnson* petition, wherein he raised the following issues (verbatim):

> 1.) Counsel rendered ineffective in failing to obtain footage from the crime scenes that were exculpatory in nature.
>
> 2.) Involuntary Guilty Plea.

(Dkt. No. 13-2 at 3 of 9.)

In an order dated September 3, 2015, the Supreme Court of South Carolina denied the petition for a writ of certiorari and granted counsel's request to withdraw. (Dkt. No. 13-3.) The matter was remitted to the lower court on September 21, 2015. (Dkt. No. 13-4.)

Petitioner then filed the instant habeas petition, wherein he raised the following grounds for review (verbatim):

> **GROUND ONE**: Ineffective Assistance of Counsel
> **Supporting facts**: Counsel fail to motion for a continuance when the judge informed us that this was a violent charge
>
> **GROUND TWO**: Ineffective Assistance of Counsel-counsel fail to do a pretrial investigation
> **Supporting facts**: Counsel fail to obtain the video footage from Gaffney Inn that would have provided an alibi for Petitioner. He also failed to obtain footage from the A.T.M.
>
> **GROUND THREE**: Ineffective Assistance of Counsel-counsel advised Petitioner to plead guilty
> **Supporting facts**: Counsel advised Petitioner that if he plead guilty then he would receive a non-violent sentence. And the judge told Petitioner that the sentence would be violent, which is a 85% sentence.
>
> **GROUND FOUR**: Ineffective Assistance of Counsel-Counsel fail to suppress uncounseled lineup
> **Supporting facts**: Counsel fail to suppress the suggestive lineup of Petitioner when Petitioner nor counsel was present during this photo-line up, which violated Petitioner's rights to due process.

(Dkt. No. 1 at 5-10 of 15.)

## APPLICABLE LAW

**Summary Judgment Standard**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" *Id.* (quoting *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999)); *see also Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990).

**Habeas Standard of Review**

Since the Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320, 322-23 (1997); *Breard v. Pruett*, 134 F.3d 615, 618 (4th Cir.1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication:

> 1. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> 2. resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceeding.

28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 410. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree'

on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

## DISCUSSION

As noted above, Respondent seeks summary judgment in the instant case. (Dkt. No. 14; *see also* Dkt. No. 13.) The undersigned addresses Petitioner's grounds for relief in turn.

### A.    Ground One and Ground Three

Petitioner contends in Ground One that counsel was ineffective in failing to file a "motion for a continuance when the judge informed [them] that [attempted armed robbery] was a violent charge." (Dkt. No. 1 at 5 of 15.) Similarly, in Ground Three, Petitioner contends that counsel was ineffective in advising Petitioner "that if he ple[d] guilty then he would receive a non-violent sentence," when in fact "the judge told Petitioner that the sentence would be violent, which is a[n] 85% sentence." (Dkt. No. 1 at 8 of 15.)

The PCR court addressed Petitioner's claim that his counsel was ineffective in misadvising Petitioner that attempted armed robbery was a non-violent offense, when in fact it was a violent offense. (*See* R. at 67-70.) The PCR court noted the testimony of Petitioner and his counsel:

> Applicant testified that he pled guilty to two counts of common law robbery and one count of attempted armed robbery, and received a sentence of eight and one-half years as a negotiated sentence. Applicant testified that he was informed by the plea judge that he was pleading to a most serious and violent offense, but Applicant testified that he believed the charge was non-violent. Applicant testified that he did not think he had enough time to prepare for trial, so he felt that he was forced to plead guilty. Applicant also testified that because of the confusion over whether or not the attempted armed robbery charge was violent or non-violent, the State agreed to reduce the negotiated sentence to eight years.
> Counsel testified that he was appointed to represent the Applicant on these charges and began work on the case in September 2011. Counsel testified that he discussed the possibility of a trial and possible defenses with the Applicant. Counsel testified that one of the issues in proceeding to trial was the fact that the Applicant had given a police statement admitting that he asked four people for rides to the ATM, but denied threatening each person. Counsel testified that although he did not have the 911 call tape from the final victim, he did have written statements from each victim. Counsel testified that he discussed an alibi defense with Applicant, but it was not a viable defense. They did discuss a possible defense if Applicant was not shown on the videotapes from the ATMs, but Counsel did not ever get any of the footage from the ATMs. Counsel testified that because one of the victims dropped Applicant

5

> off around Fourth Street, the defense of a drug deal gone bad was also discussed. The Applicant was concerned about the charge being considered violent because he was facing five charges (four armed robbery charges and one attempted armed robbery) and had prior offenses. Counsel testified that he did make a mistake when initially advising the Applicant that the charge would be non-violent, but that issue was resolved at the plea when the State agreed to reduce the negotiated sentence further and the violent nature of the charge was discussed with Applicant. Ultimately, Counsel testified that he discussed the options that Applicant faced with the Applicant and Applicant picked the option to plead guilty with the negotiated sentence.

(R. at 67-68.)

The PCR court first found that although Petitioner "specifically raised the allegation[] that Counsel was ineffective for failing to move for a continuance," he "voluntarily abandoned th[at] allegation[]" because "he did [not] pursue . . . th[at] allegation[] at the hearing." (R. at 69.) The PCR court then found the testimony of counsel "to be more credible than the testimony" of Petitioner. (R. at 69.) The PCR court stated,

> In Hill v. Lockhart, 474 U.S. 52 (1985), the United States Supreme Court held that the two-part standard adopted in Strickland v. Washington, supra, for evaluating claims of ineffective assistance of counsel applies, as well, to guilty plea challenges based on ineffective assistance of counsel. To meet the Court's "prejudice" requirement, a criminal defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. Hill at 59. Although it was clear through testimony that Counsel did misadvise the Applicant as to the non-violent/violent nature of his charge, this Court finds that the error was cured by the plea court and further discussions with the Applicant as to his understanding and willingness to continue with the plea. Even where counsel fails to advise, or even misadvises, a defendant regarding a critical aspect of his charges, such as sentencing range, the error is cured where the trial court during a guilty plea properly advises the defendant about the matter in question. Moorehead v. State, 329 S.C. 329, 496 S.E.2d 415 (1998). The Applicant failed to establish that he would have proceeded to trial[] but for[] Counsel's incorrect advice and failure to fully investigate possible defenses. Therefore, this claim is denied and dismissed.

(R. at 69-70.)

The United States Supreme Court has said that a meritorious ineffective assistance of counsel claim must show two things: first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687-

6

96 (1984). A court's evaluation of counsel's performance under this standard must be "highly deferential," so as to not "second-guess" the performance. *Id.* at 689. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."  *Id.* (internal quotation marks and citation omitted); *see also Bowie v. Branker*, 512 F.3d 112, 119 n.8 (4th Cir. 2008); *Fields v. Att'y Gen. of Md.*, 956 F.2d 1290, 1297-99 (4th Cir. 1992); *Roach v. Martin*, 757 F.2d 1463, 1467 (4th Cir. 1985).

In order to establish the second prong of *Strickland*, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  A "reasonable probability" has been defined as "a probability sufficient to undermine confidence in the outcome." *Id.* While *Strickland* itself is a deferential standard, when both § 2254(d) and *Strickland* apply, "review is doubly" deferential. *Harrington v. Richter*, 562 U.S. 86, 105 (2011). Indeed, when § 2254(d) applies, "[t]he question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105.

The two-part test enunciated in *Strickland* applies to challenges to guilty pleas based on ineffective assistance of counsel. *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985). "[I]n order to satisfy the 'prejudice' requirement [set forth in *Strickland*], the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.

The undersigned recommends granting summary judgment to Respondent as to Ground One and Ground Three. During the guilty plea, the judge indicated that attempted armed robbery "is a violent and a most serious offense." (R. at 6.) The judge further stated,

> I will advise you that that carries with it certain ramifications that it could serve as one of your strikes. In the future if you pled guilt[y] to or were found guilty of other offenses that qualified as a strike or classified as a violent serious or most serious,

7

> your plea in that case could be used in the future to make future sentences much more severe. It could result in a sentence of life imprisonment without the possibility of ever receiving parole.

(R. at 6.) Upon hearing this, counsel stated that he believed "that attempted armed robbery is a nonviolent offense." (R. at 7.) The judge ordered a break, and when the proceedings resumed, counsel stated that he was mistaken and needed a moment to talk to Petitioner. (R. at 7-8.) The judge allowed another break, this time for counsel to speak with Petitioner. (R. at 8.) When proceedings once again resumed, the following exchange occurred:

> MR. SLADE: Your Honor, I appreciate you letting us stand aside.
>
> MR. KENDALL [the solicitor]: We did the research on it, Your Honor. It is, in fact, a violent offense.
>     As a sign of good will, we have changed the negotiation from eight and a half years to eight years, to reflect that he was unaware it was violent, so now the negotiated sentence is eight years on the attempted armed robbery and concurrent sentencing on the two common law robberies, Your Honor.
>
> THE COURT: I understand.
>
> MR. SLADE: And I wanted–if I may, Your Honor, I did want to say I appreciate you letting us stand this aside. I had told [Petitioner] that the attempted armed robbery was a nonviolent offense. It is, in fact, a violent offense. I made a mistake. I just wanted to make sure we put that on the record clearly so this wouldn't be an issue somewhere down the line.
>
> THE COURT: Oh, I understand, and I'm going to ask [Petitioner], have you had an opportunity to discuss that situation with your lawyer?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: And are you satisfied with those discussions?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Now, has he thoroughly explained to you the designation of it being a violent and most-serious offense?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: And you understand what that carries with it?

>THE DEFENDANT: Yes, sir.
>
>THE COURT: It affects not only your eligibility for parole, but it also affects future sentences, if you have future violations that are similar in nature. Do you understand that?
>
>THE DEFENDANT: Yes, sir.
>
>THE COURT: Okay.
>   All right. Now, I think we are at the point of where we were discussing the nature of the charges.
>   I will now, Mr. Parker, ask you if you are ready to enter a plea? Are you ready to do that?
>
>THE DEFENDANT: Yes, sir.
>
>THE COURT: On these charges you have the right to enter a plea of either guilty or not guilty. How do you plead?
>
>THE DEFENDANT: Guilty.
>
>THE COURT: Counselor, I'm sure that you have discussed all of those matters with your client, is that correct?
>
>MR. SLADE: Yes, sir.
>
>THE COURT: And are you satisfied that he understood those discussions?
>
>MR. SLADE: Yes, sir.
>
>THE COURT: He's indicated to me that he's made this decision to offer a guilty plea. Do you agree with his decision?
>
>MR. SLADE: I do.

(R. at 8-10.)

The plea judge asked Petitioner whether anyone had "done anything to [him], such as threaten [him], or put pressure on [him], threatened [him], do[ne] anything to try to force [him] or make [him] offer a plea"; Petitioner said, "No, sir." (R. at 11.) The judge asked Petitioner whether he was "doing this freely and voluntarily"; Petitioner said, "Yes, sir." (R. at 11-12.) When asked whether he had enough time to consider this matter, Petitioner stated, "Yes, sir." (R. at 12.) The judge asked whether

9

anyone "made any promises or guarantees or assurances, other than the negotiated sentence in this matter, in an effort to try to get [him] to plead"; Petitioner said, "No, sir." (R. at 12.) The judge went over the rights Petitioner was waiving by pleading guilty; Petitioner stated that he understood and still wanted to plead guilty. (R. at 12-14.)

Here, the PCR court found that Petitioner failed to demonstrate prejudice because the plea judge "cured" the error, and after the error was "cured", Petitioner indicated he understood and still wished to plead guilty. (R. at 70.) The state court's conclusion was not contrary to, or an unreasonable application of, clearly established federal law, nor was the state court's decision based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d). Accordingly, Petitioner is not entitled to federal habeas relief on Ground One or Ground Three. *See Missouri v. Frye*, 132 S. Ct. 1399, 1406-07 (2012) (noting opportunity at plea entry proceedings to remedy deficient advice by defense counsel); *United States v. Akinsade*, 686 F.3d 248, 253 (4th Cir. 2012) ("A defendant may be unable to show prejudice if at the Rule 11 proceeding the district court provides an admonishment that corrects the misadvice and the defendant expresses that he understands the admonishment."); *United States v. Hanley*, 906 F.2d 1116, 1121 (6th Cir. 1990) (holding that defendant was not entitled to relief on his claim of ineffective assistance of counsel where his counsel incorrectly advised him that he would be eligible for parole in a third of the time he received for a sentence because "the letter from Hanley's attorney to Hanley containing this advice was mailed to Hanley thirteen days *after* he pled guilty," and the court informed the defendant of the potential range of incarceration for his crime and advised him that he would be sentenced under the guidelines). The undersigned therefore recommends granting summary judgment to Respondent as to Ground One and Ground Three.[2]

---

[2]Ground One and Ground Three are closely related. As noted above, the PCR court concluded that Petitioner "voluntarily abandoned" his allegation that counsel was ineffective in failing to move for a continuance. (R. at 69.) The Supreme Court of South Carolina has concluded that a similar statement "does not constitute a sufficient ruling on any issue[] since it does not set forth specific findings of fact and conclusions of law." *Marlar v. State*, 375 S.C. 407, 409, 653 S.E.2d 266, 266-67 (2007). Accordingly, the claim that counsel was ineffective in failing to move for a continuance is procedurally barred. *See Bostick v. Stevenson*, 589 F.3d 160, 162-65 (4th Cir. 2009) (holding that, prior to South Carolina Supreme Court's decision in *Marlar*, the state courts had not consistently enforced a procedural bar based on a PCR applicant's failure to file a Rule 59(e) motion, so for matters in which the PCR court ruled prior to *Marlar* (in other

**B.      Ground Two**

In Ground Two, Petitioner asserts that counsel was ineffective in "fail[ing] to do a pretrial investigation." (Dkt. No. 1 at 7 of 15.) Petitioner states, "Counsel fail[ed] to obtain the video footage from Gaffney Inn that would have provided an alibi for Petitioner. He also failed to obtain footage from the A.T.M." (*Id.*)

The PCR court addressed the testimony related to this claim as follows:

> Applicant testified that he did not think he had enough time to prepare for trial, so he felt that he was forced to plead guilty. . . .
> Counsel testified that he was appointed to represent the Applicant on these charges and began work on the case in September 2011. Counsel testified that he discussed the possibility of a trial and possible defenses with the Applicant. Counsel testified that one of the issues in proceeding to trial was the fact that the Applicant had given police a statement admitting that he asked four people for rides to the ATM, but denied threatening each person. Counsel testified that although he did not have the 911 call tape from the final victim, he did have written statements from each victim. Counsel testified that he discussed an alibi defense with Applicant, but it was not a viable defense. They did discuss a possible defense if Applicant was not shown on the videotapes from the ATMs, but Counsel did not ever get any of the footage from the ATMs. Counsel also testified that because one of the victims dropped Applicant off around Fourth Street, the defense of a drug deal gone bad was also discussed. . . . Ultimately, Counsel testified that he discussed the options that Applicant faced with the Applicant and Applicant picked the option to plead guilty with the negotiated sentence.

(R. at 68.)

---

words, prior to November 5, 2007), the district court should not consider the failure of the petitioner to file a Rule 59(e) motion to obtain a ruling on a properly raised issue as a procedural bar); *see also Blassingame v. Cartledge*, Civ. A. No. 4:14-cv-02814-JMC, 2015 WL 5554589, at *6-7 (D.S.C. Sept. 21, 2015) (concluding various grounds for relief were procedurally barred because although they were raised in the post-conviction relief proceedings, the PCR court did not make a ruling, and the petitioner failed to file a Rule 59(e) motion as required by *Marlar*).

Procedural default may be excused if the Petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Martinez v. Ryan*, 132 S. Ct. 1309, 1315 (2012). In the alternative for showing cause and prejudice, a petitioner may attempt to demonstrate a miscarriage of justice, e.g., actual innocence, *Bousley v. United States*, 523 U.S. 614, 623 (1998); *see also Schlup v. Delo*, 513 U.S. 298, 327 (1995), or abandonment by counsel. *Maples v. Thomas*, 132 S. Ct. 912, 924 (2012) (inquiring "whether [the petitioner] ha[d] shown that his attorneys of record abandoned him, thereby supplying the extraordinary circumstances beyond his control, necessary to lift the state procedural bar to his federal petition" (internal quotation marks and citations omitted)). Petitioner has not made any showing sufficient to overcome the procedural bar.

After finding counsel's testimony "to be more credible than the testimony of the" Petitioner, the PCR court stated,

> Applicant's testimony appeared to alleged that Counsel was unprepared to proceed to trial, which led to Applicant's reluctant acceptance of the plea. The Applicant's allegation that Counsel failed to conduct an adequate pre-trial investigation is without merit. Following testimony and review of the transcript, it is clear that Counsel had reviewed the facts and evidence, as well as the options that Applicant faced. The "brevity of time spent in consultation, without more, does not establish that counsel was ineffective." Easter v. Estelle, 609 F.2d 756, 759 (5th Cir. 1980). To establish counsel was inadequately prepared, an Applicant must present evidence of what counsel could have discovered or what other defenses could have been pursued had counsel been more fully prepared. Jackson v. State, 329 S.C. 345, 495 S.E.2d 768 (1998); Skeen v. State, 325 S.C. 210, 481 S.E.2d 129 (1997) (applicant not entitled to relief where no evidence presented at PCR hearing to show how additional preparation would have had any possible effect on the result at trial). The Applicant failed to point to any specific matters Counsel failed to discover, or any meritorious defenses that could have been pursued had Counsel been more fully prepared. Furthermore, the Applicant failed to show any prejudice that may have resulted from Counsel's alleged inadequate preparation. Accordingly, this allegation is dismissed.
> . . .
> This Court finds in regards to the allegation of ineffective assistance of counsel, the Applicant's testimony is not credible. This Court further finds Counsel adequately conferred with the Applicant, conducted a proper investigation, was thoroughly competent in his representation, and that Counsel's conduct does not fall below the objective standard of reasonableness.
> Accordingly, this Court finds the Applicant has failed to prove the first prong of the Strickland test–that Counsel failed to render reasonably effective assistance under prevailing professional norms. Applicant failed to present specific and compelling evidence that Counsel committed either errors or omissions in his representation of the Applicant.
> This Court also finds the Applicant has failed to prove the second prong of Strickland–that he was prejudiced by Counsel's performance. This Court concludes the Applicant has not met his burden of proving Counsel failed to render reasonably effective assistance. See Frasier *supra*. Therefore, this allegation is denied.

(R. at 69-71.)

At the PCR hearing, counsel testified as follows:

> We–we discussed a trial for a long time, that we discussed several defenses in the course of discussing a trial.
> The–one of the main problems that we had in the case was David had given a statement saying that he had asked four people for rides and asked them to take him by the A.T.M. but denied threatening them if I recall his statement correctly.

The–the heart of the state's case was that David would flag people down. And what the–what the witnesses, the complainant, the complainants, would have testified to was that David would flag them down and ask them for a ride.

And once they got in the car he would–with a couple of them, ask them to borrow the phone. Once he had the phone, then he would somehow convey to them sometimes by putting his hand under his shirt or under whatever outer garment he was wearing and tell them he didn't want anybody to get hurt but take him by the A.T.M., give him some money, that kind of thing.

So that was–in David's statement he admits getting rides from I believe it was four people altogether. So although we–we talked about alibi or he talked about alibi it really wasn't–it wasn't a very viable defense in my opinion.

I did a good bit of research looking at several other possible avenues. David–the good thing for David was he's generally a very talkative, friendly guy, and we–I was hoping that there might be some defense based on his just suggesting to these people maybe they took it the wrong way, maybe he asked them for money, they felt threatened.

One of the other defenses that we talked about that was a much more viable defense than any kind of alibi was at least one of these people let him off somewhere I believe–again, I haven't spent a lot of time reviewing the file, but I believe one of them let–let him off around 4th Street, which is essentially a drug area where people buy crack and stuff in Gaffney a lot.

And so we looked at the possibility of maybe these people who he was–who were giving him rides were in actuality making a drug connection and they got mad because he took the money and left.

In my opinion–and David and I talked about this several times–those were potentially much more–much better defenses than an alibi defense.

In the last case, the one where we got arrested, he flagged down a young guy, a teenager, who was, I don't know, 17 or 18 years old and told him–when the guy let him in the car he told him to take him to the bank to get some money. And the kid said he didn't have any money. And David said, well, I just needed to rest my feet, why don't you take me by the McDonald's, can you give me some change.

And so I looked at maybe abandonment, maybe a defense with some of these cases. We discussed all of those things.

In the last one, that young–the teenager–waited I think across the street from–he–I believe David asked him to take him to the McDonald's and then decided he'd let him off across the street at the gas station–the Murphy.

And the accuser then waited, called–called the police and waited until the police got there. And I think they picked up David at the–at the gas station.

So and David understood. He had some prior offenses. He was concerned about the violent offense, and we talked for a long time about trying this case.

The problem–and I explained it to David, and I think to his mom and maybe some other people in his family–I don't really recall right now–but–but the problem is they had five cases against him, and they only got to win one. I mean, we got to win all of them.

13

> The–when–when they finally offered us something on common-law attempted robbery, I just thought it was a better thing to go on and take the–what they originally offered was eight and a half years. And we went back and forth and back and forth on whether or not to plead or go to trial.
>
> And there were times that David really wanted to try the case, and there were times when he was willing to do a plea. But I just explained to him, like I said, they only got to win one and he's going to get, you know, in my opinion because he had some prior drug offenses–he had done some time in S.C.D.C. that I just felt like–I mean, of course the minimum is ten, and I just felt like he was going to get on the high end and, you know, at the point where we had to take the–make a decision on taking the plea, he decided that–to take the plea.

(R. at 44-48.)

Counsel further testified as follows:

> The judge was reading [the Petitioner] the–going over the–the consequences of the plea as they do, and he mentioned that [the attempted armed robbery was violent]. And I realized at that point that I had misinformed David. And so I asked Judge Couch if we could just talk about it, and we talked about it. And I talked with the prosecutor and they–and I told them that I had–that that was something we were concerned about. And they reduced the recommendation from eight and a half to eight is my recollection.
>
> And David and I talked about it, and I explained to him that we were going to have to take–we were going to have to take the deal then.
>
> We wouldn't have had to try the case that week, but I was concerned that we had been back and forth and back and forth on–on a–on a plea, and I was just very concerned that if we turned down that we weren't going to ever get a chance at–at another recommendation of common-law robbery, okay, something that was below the mandatory ten, something that didn't carry the mandatory ten. And I was afraid if we told them that if–if we weren't taking that then we weren't going to get a chance at that deal again.
>
> And that may have been what the solicitor told me. I don't recall that. They were anxious to go on and move this case. And I'm sure I would have related to David what the solicitor was telling me. I'm sure that had we chosen the trial option we would have been given the time to get whatever we needed to do done in order to prepare for it.
>
> I don't think–I heard David's testimony a few minutes ago, and I don't really think an alibi defense was a viable defense or something we were depending on.
>
> I think the defenses we would have used would have depended somewhat on which of the cases they were going to try. As I said, there were a number of them. The defenses were a little different perhaps for each one. I don't think an alibi defense was something that we would have seriously considered.

(R. at 48-50.)

Petitioner testified at the PCR hearing that he had an alibi for at least two of the charges because "when two of the robberies took place [he] was at the motel with [his] wife." (R. at 39.) He also testified that he believed counsel should have obtained the ATM footage because "had [he] been the assailant . . . [he] would have shown up on the . . . A.T.M. footage." (R. at 40.) He further testified that Limestone Courts has video surveillance, and "each time after the assailant got out[ of] the car, they got out at Limestone Courts," so Petitioner "believe[d] that the video footage could have exonerated [him] because it would not have shown [him] being dropped off at approximately the time of some of [his] crimes." (R. at 40.)

The undersigned recommends granting summary judgment to Respondent on Ground Two. Counsel testified that an alibi defense was not a viable defense, given Petitioner's statement to law enforcement. (R. at 44-45.) The state court found counsel's testimony to be more credible than Petitioner's testimony, and such a factual finding on credibility is "presumed to be correct"; Petitioner has the "burden of rebutting the presumption . . . by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Wilson v. Ozmint*, 352 F.3d 847, 858 (4th Cir. 2003); *cf. Wilson*, 352 F.3d at 860 ("These facts do not compel the credibility determination reached by the state court, but they certainly provide sufficient basis, for purposes of section 2254(d)(2), to support such a determination."). Petitioner has not done so.

Moreover, as noted in *Beaver v. Thompson*, 93 F.3d 1186 (4th Cir. 1986), "an allegation of inadequate investigation does not warrant habeas relief absent a proffer of what favorable evidence or testimony would have been produced." *Beaver*, 93 F.3d at 1195. Petitioner contends his wife could have provided him with an alibi for two of the robberies, but his wife did not testify at the PCR hearing. Petitioner asserts that the ATM footage and the video surveillance from Limestone Courts would have shown he was not the perpetrator, but he did not introduce the ATM or video surveillance footage at his PCR hearing. Accordingly, Petitioner is not entitled to federal habeas relief on his claim of inadequate investigation. *See id.*; *see also Bassette v. Thompson*, 915 F.2d 932, 940-41 (4th Cir. 1990) (concluding the petitioner's claim that other evidence should have been presented during

15

the sentencing phase of his trial failed in "the absence of a proffer of testimony from a witness or witnesses he claims his attorney should have called," stating, "He claims that his counsel conducted an inadequate investigation to discover persons who would testify in his favor, but he does not advise us of what an adequate investigation would have revealed or what these witnesses might have said, if they had been called to testify.").

## C.     **Ground Four**

Petitioner asserts in Ground Four that his counsel was ineffective in "fail[ing] to suppress [an] uncounseled lineup." (Dkt. No. 1 at 10 of 15.) Petitioner states, "Counsel fail[ed] to suppress the suggestive lineup of Petitioner when Petitioner nor counsel was present during this photo-line up, which violated Petitioner's rights to due process." (*Id.*) The PCR court addressed this claim as follows:

> First, this Court finds that although the Applicant specifically raised the allegation[] that Counsel was ineffective for . . . failing to move to suppress the photo lineup, . . . he did [not] pursue . . . th[at] allegation[] at the hearing. Therefore, this Court finds that Applicant voluntarily abandoned th[at] allegation[].

(R. at 69.)

As previously noted, the Supreme Court of South Carolina has concluded that a similar statement "does not constitute a sufficient ruling on any issue[] since it does not set forth specific findings of fact and conclusions of law." *Marlar v. State*, 375 S.C. 407, 409, 653 S.E.2d 266, 266-67 (2007). Accordingly, the claim that counsel was ineffective in failing to move to suppress the photo lineup is procedurally barred. *See Bostick v. Stevenson*, 589 F.3d 160, 162-65 (4th Cir. 2009) (holding that, prior to South Carolina Supreme Court's decision in *Marlar*, the state courts had not consistently enforced a procedural bar based on a PCR applicant's failure to file a Rule 59(e) motion, so for matters in which the PCR court ruled prior to *Marlar* (in other words, prior to November 5, 2007), the district court should not consider the failure of the petitioner to file a Rule 59(e) motion to obtain a ruling on a properly raised issue as a procedural bar); *see also Blassingame v. Cartledge*, Civ. A. No. 4:14-cv-02814-JMC, 2015 WL 5554589, at \*6-7 (D.S.C. Sept. 21, 2015) (concluding

16

various grounds for relief were procedurally barred because although they were raised in the post-conviction relief proceedings, the PCR court did not make a ruling, and the petitioner failed to file a Rule 59(e) motion as required by *Marlar*). While there are certain circumstances in which procedural default may be set aside,[3] Petitioner has set forth none of those circumstances. Accordingly, the undersigned recommends concluding that Ground Four is procedurally barred and granting summary judgment to Respondent as to this ground for relief.

## CONCLUSION

It is RECOMMENDED, for the foregoing reasons, that Respondent's Motion for Summary Judgment (Dkt. No. 14) be GRANTED; and the Petitioner's habeas petition be DISMISSED WITH PREJUDICE. It is further RECOMMENDED that a certificate of appealability be denied.[4]

IT IS SO RECOMMENDED.

_____
MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

November 14, 2016
Charleston, South Carolina

**The parties' attention is directed to the important notice on the next page.**

---

[3] *See supra* n.2.

[4] Title 28, Section 2253 provides in relevant part,
(c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from–
(A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
(B) the final order in a proceeding under section 2255.
28 U.S.C. § 2253. A prisoner satisfies this standard by demonstrating that reasonable jurists would find this court's assessment of his constitutional claims debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683 (4th Cir. 2001). In the case *sub judice*, the legal standard for a certificate of appealability has not been met. The undersigned therefore recommends that a certificate of appealability be denied.

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> **Robin L. Blume, Clerk**
> **United States District Court**
> **Post Office Box 835**
> **Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).